[Crim. No. 5208. Second Dist., Div. Two. Nov. 22, 1954.]

THE PEOPLE, Respondent, v. ALBERT ROBERT MacCAGNAN, Appellant.

Daniel G. Marshall for Appellant.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney, Jere J. Sullivan, Deputy District Attorney, and Robert Wheeler, Deputy District Attorney, for Respondent.

MOORE, P. J.—Convicted of having had in his possession "flowering tops and leaves of Indian Hemp," familiarly called "marijuana," (Health & Saf. Code, § 11500) a narcotic, defendant seeks a reversal on the grounds of (1) the insufficiency of the evidence to prove he had knowledge of his possession of the contraband; (2) errors in rejecting appellant's offered instructions on (a) knowledge, (b) giving other instructions, (c) accusatory statements; (3) error in receiving evidence of value of contraband; (4) error in the prosecutor's telling the jury defendant admitted his guilt; (5) error in proceeding on an indictment (No. 160110) charging same offense as that alleged in the information (No. 157170) which had been based upon the commitment by the municipal court and which information was still pending; (6) error in denying motion for new trial.

Before relaying the story of appellant's experiences and his clash with the law, it will serve to illuminate other refer-

ences to report an antecedent proceeding wherein appellant was accused by complaint of the same offense charged in the instant indictment, was committed in June, 1953, and was accordingly charged by information and his bail fixed at $2,500. Trial on the information (No. 157170) began September 17, 1953. Thereupon, the Supreme Court issued its writ prohibiting the superior court from taking any further proceeding on the information until further orders; directed the superior court to complete its transcription of the preliminary examination or file a supplemental transcript containing all steps taken not contained in the transcript already on file. The trial was continued to January 18, 1954. The People filed in the Supreme Court a request and consent "that they immediately issue herein a peremptory writ as prayed for without prejudice to proceeding by means of a new preliminary hearing or by indictment." The superior court thereafter advanced, without notice to appellant, the trial date from January 18, 1954, to December 16, 1953, and on the latter date, without notice to appellant, dismissed the information in No. 157170 in the interest of justice. That left pending the indictment No. 160110 which had been presented November 10, 1953, after the superior court had consented to the issuance of the peremptory writ. The accused was allowed liberty on $1,500 bail and his arraignment set for November 25, 1953. His motion to quash the indictment under section 995 of the Penal Code was overruled. His trial resulted in his conviction, denial of motion for new trial; denial of bail and his filing notice of appeal which is here for review.

## Facts Prove Knowledge

Officer Cowan accompanied by officer Samuelson arrested appellant in a drunken condition at 11:45 p.m. June 7, 1953 at a cafe in Long Beach. They transported him to the city jail and escorted him to the booking lobby. Appellant seated himself on a bench where Cowan observed him fumbling with his right sock. He told the jailers to look in the prisoner's hosiery. As he removed his right sock, pursuant to the jailer's instructions, Officer Turley asked to see what the accused had. Not only did the latter refuse to display the object he held, but thrust his hands into his pockets and refused to withdraw them. When Officer Leslie attempted to take appellant's hands from his pockets, in the midst of the violent struggle of the jailers with the prisoner, Officer Cowan reached through the slit in the coveralls and removed the red package of "Pall Mall" from the crotch of the

coveralls, marked the cigarettes therein for identification and deposited them in a safe. When Samuelson returned to the lobby and asked appellant whether the cigarettes were his, the only reply was: *"I don't smoke that brand."*

The foregoing recital was substantially the evidence of officers Cowan, Leslie and Turley. Officer Simonds, expert chemist, testified that the leafy material of the cigarettes was marijuana.

Appellant resisted search; attempted to conceal the cigarettes and exerted himself to the limit to prevent their recovery by the officers and never denied that the red package was his own. ■ The lawful right to search a prisoner at the time of arrest (*Bruce* v. *Sibeck,* 25 Cal.App.2d 691, 696 [78 P.2d 741]) implies the correlative duty on the part of the prisoner to submit to the search. ■ When one owes a duty to the state and defies its agencies to enforce performance of such duty, no reasonable inference can be drawn other than that the prisoner was conscious of a knowledge of his guilt. ■ Appellant's refusal to deliver the red package to his captors, and his resistance to search in the city jail, justified the jury in finding (1) that he knew his package contained the narcotic, which fact the chemist discovered (*People* v. *Gory,* 28 Cal.2d 450, 454 [170 P.2d 433]), and (2) that his wilful interference with the performance of official duty was proof of his wilful possession of the contraband. (*People* v. *Tomalty,* 14 Cal.App. 224, 235 [111 P. 513].) ■ A prisoner's secret knowledge of the illegal character of narcotics in his possession is "sufficiently shown by the conduct and behavior" of the accused in attempting to secrete them. (*People* v. *Tennyson,* 127 Cal.2d 243, 246 [273 P.2d 593]; *People* v. *Batwin,* 120 Cal.App.2d 825, 827 [262 P.2d 88]; *People* v. *Walker,* 121 Cal.App.2d 173, 175 [262 P.2d 640].) ■ That the conduct of a person accused of crime immediately after his commission of the act charged is proper evidence, is too well established to be challenged. (*People* v. *Flannelly,* 128 Cal. 83, 87 [60 P. 670].) ■ Attempts to escape, to hide, to evade a peace officer or to conceal from an arresting officer a contraband object in his possession are pertinent proofs of a guilty mind. (*Ibid.*) ■ Consciousness of guilt may be inferred from an attempt to avoid apprehension. (*People* v. *Dabb,* 32 Cal.2d 491, 500 [197 P.2d 1].)

Appellant takes comfort from his assumption that the jury *knew* that he had no knowledge of the presence of the marijuana cigarettes in his red package. He contends that, because

of his intoxication at the time of his arrest, he could have had no knowledge of either (1) the contraband character of his cigarettes or (2) of their physical presence on his person. Now, his knowledge of their actual presence was determined by the jury on the testimony of four officers who saw the contraband removed from his clothing after he had tried to prevent the officers seeing it. ■ On mere suspicion it could not reasonably have been found that another had inserted the red package in his right sock or placed it in his coveralls. The pants of a man or the "coveralls" over them are so intimate a vestment that what is found there, in the absence of a contradictory explanation, the contents of the pockets or of the inside of the garment are presumed or reasonably inferred to have been placed there by the owner. ■ Also, when an object is found in such a garment worn by a person it is necessarily under his dominion or physical control and is, by reason thereof, a prima facie violation of the statute.* The jury were, on the evidence of the four officers, justified in finding that appellant had knowledge, not only of the presence of the marijuana, but also of his control over it. ■ Moreover, a finding of his knowledge of its presence in his package of cigarettes necessarily encompasses a finding that he knew the nature of the object and the uses to which it is applied. A man does not carry contraband merchandise in his sock or his pocket through accident. The violator of the statute is guilty unless he presents a defense prescribed by the statute, to wit: "the written prescription of a physician," etc. ■ But despite the fact that he had no prescription for the marijuana, appellant contends that because he was drunk when arrested, he was unconscious of either his possession of the narcotic or of its contraband character. Whether he knew either was a fact which the jury found against him. The finding effectually determined that he had such knowledge prior to the act of inserting the contraband into his clothing and walking into the cafe where he was found drunk. (*People* v. *Gory, supra.*) If the law allowed crimes to be committed with impunity by those who are drunk, the criminal elements of a city would at every night-fall swim in rivers of alcohol to erase guilt

---

*Section 11500, Health and Safety Code. "Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer, or give away, or attempt to transport a narcotic except upon the written prescription of a physician, dentist, chiropodist, or veterinarian licensed to practice in this State."

of the murders, rapes, banditry, and all the offenses proscribed by the statutes of this state. When a person imbibes alcohol, he knows he deadens his senses and that anything might occur by reason of his intoxication. How, then, can a violator of the law be excused for his crimes and yet, in spite of such behavior, expect the people to maintain a state for the preservation of life and liberty?

### Instructions Not Prejudicial

Appellant assigns as prejudicial the alteration of his instruction 33 as follows:

"It is an essential fact which must be proved beyond a reasonable doubt that the Defendant had knowledge that the article found on him was marijuana. You must acquit the Defendant if the People fail to prove beyond a reasonable doubt that he knew this article was marijuana *while it was in his possession*; if you find it *was in* his possession."

Before the modification, the italicized phrase "while it was in his possession" was "at the time it came into his possession." The change was proper. There is no evidence of when, where or how the marijuana reached appellant's possession. Because there was proof that it was in his possession, the change was free from error.

The giving of C-35 is assigned as prejudicial. It is as follows:

"You are instructed that a violation of Section 11500 of the Health and Safety Code, does not require that the defendant acted with any particular purpose, motive, or intent. All that is required, is for you *to find*, beyond a reasonable doubt, that the defendant *knowingly possessed a narcotic.* That is, that he knew he had the substance and that he knew it was a narcotic."

No suggestion is made as to how the instruction prejudiced appellant. Standing alone it is harmless; when read as a part of the entire charge, its benefit is readily apparent. (*People* v. *Tolmachoff*, 58 Cal.App.2d 815, 825 [138 P.2d 61].) Guilt is founded upon defendant's conscious possession of a substance he knew to be a narcotic. (*People* v. *Gory, supra; People* v. *Martin*, 76 Cal.App.2d 317, 319 [172 P.2d 910].) "The statute provides that mere possession of marijuana shall subject the possessor to the penalties prescribed." (*People* v. *Rumley*, 100 Cal.App.2d 6, 9 [222 P.2d 913].)

Complaint is made of the court's rejection of nine

certain instructions offered by appellant.* Those instructions would have added only confusion. Some of them are argumentative; some are repetitious; some are substantially included in those given and some are contrary to the law.

---

*"DEFENDANT'S INSTRUCTION No. [From CALJIC 78B]

"In order for Defendant to have in his possession the object charged in the information, you must be convinced by the evidence and beyond a reasonable doubt that he was aware of the presence of that object on his person.

"You must take into consideration, however, the evidence offered to prove that the accused was intoxicated at the time he is alleged to have had that object in his possession.

"The Defendant may not be found guilty of the offense with which he is charged unless you can and do find from the evidence and beyond a reasonable doubt that he was in such a state of intoxication as prevented him from being aware or knowing that he had such object on his person."

"Even if you find from the evidence beyond a reasonable doubt that the Defendant had on his person the object charged in the information, before you can find him guilty you must also be convinced beyond a reasonable doubt that he was sober enough to have known or to have been aware that he had that object on his person.

"If you find that at the time Defendant was taken into custody he was intoxicated to the degree that he could not be said to be aware of the presence on his person of such object, then you will find the Defendant not guilty and must acquit him.

"The Defendant, as I have already instructed you, is presumed to be innocent of the offense of possessing the article alleged in the information. Hence it is also presumed that if he were sober he would not have taken possession of that object and it is also presumed that if he were sober he would not have allowed that object to have been placed on his person. In order then for you to find the Defendant guilty, even if you find that he had such object on his person, it must be proved beyond a reasonable doubt that at the time he took possession of that object he was sober."

"You are instructed that if you have a reasonable doubt that Defendant ALBERT MACCAGNON was given or received marijuana cigarettes in a package of one of the standard brands of cigarettes made of tobacco and retained it in his possession in the honest and innocent belief that it was a package of that brand of cigarettes, then you must find Defendant ALBERT MACCAGNON not guilty."

"You are instructed that mere naked possession of a narcotic in and of itself should not be considered by you as substantial evidence that the Defendant knew it was a narcotic, unless the circumstances of such possession are such as to indicate that the Defendant must have had such knowledge. In other words, the mere finding on the person of the Defendant, at a time he appears to have been unconscious of a narcotic, shall not be considered by you to be substantial evidence that the Defendant knew it was a narcotic, unless the evidence shows beyond a reasonable doubt and to a moral certainty that such narcotic was knowingly in the possession of the Defendant at a time when he was actually conscious and mentally and physically able to know and understand its nature."

"You are instructed that while it is not incumbent upon the Prosecution to prove that Defendant had a specific intent to violate the law or a specific provision of the law, nevertheless it is indispensable to a conviction for the Prosecution to prove beyond a reasonable doubt and to a moral certainty that the Defendant had a guilty knowledge of the

By instructions given, the jury were in effect, advised that they must not find defendant guilty unless he knew the contraband was on his person and knew that it was contraband. ▉ A court is not obliged to repeat an instruction in the

existence of the facts which would constitute the violation charged in the Information: that is to say, the Prosecution must prove beyond a reasonable doubt

"(1) That the Defendant ALBERT MACCAGNON consciously knew and was aware that the article was actually on his presence or in his possession;

"(2) That Defendant ALBERT MACCAGNON actually knew and was consciously aware of the fact that such article was marijuana; unless the Prosecution have proved beyond a reasonable doubt and to a moral certainty that ALBERT MACCAGNON had such actual guilty knowledge, you must find Defendant not guilty."

"You are instructed that mere physical presence on the Defendant's person of marijuana does not constitute the guilty knowledge indispensable to a conviction herein; in order to have possession which is alleged in the Information it must appear beyond a reasonable doubt and to a moral certainty that the marijuana was placed on his person or that he received the marijuana or that he retained the marijuana with the conscious knowledge that it was so placed on his person or that he was receiving it or that he was retaining it, and it must further appear from the evidence beyond a reasonable doubt and to a moral certainty that at the time it was so placed on his person, or received by him or retained by him that he had a conscious guilty knowledge that the article or articles were marijuana; unless you so find from the evidence beyond a reasonable doubt and to a moral certainty you must find Defendant ALBERT MACCAGNON not guilty and acquit him."

"You are instructed that even though it may appear that Defendant possessed marijuana or had marijuana on his person, nevertheless you must find the Defendant, ALBERT MACCAGNON, not guilty unless the evidence proves beyond a reasonable doubt and to a moral certainty that he consciously had knowledge that the substance was on his person."

"You are instructed that even though it may appear that Defendant possessed marijuana or had marijuana on his person, nevertheless you must find the Defendant, ALBERT MACCAGNON, not guilty unless the evidence proves beyond a reasonable doubt and to a moral certainty that he had conscious knowledge that the substance was marijuana."

"You are instructed that the mere physical presence on the person of a defendant of a narcotic at a time when such defendant was physically or mentally unconscious and unable to perceive or understand the presence of such narcotic or the nature thereof, is not sufficient to establish the guilty knowledge necessary to a conviction. Therefore, unless the evidence has proved to you beyond a reasonable doubt and to a moral certainty that such narcotic came into Defendant's possession or was placed upon his person at a time when he was physically and mentally able to perceive, understand and appreciate the fact of its presence and the nature of the narcotic you must find Defendant ALBERT MACCAGNON not guilty."

"Even though the article found on the Defendant turns out to be marijuana, you must find the Defendant not guilty unless the People prove beyond a reasonable doubt that he knew this article was marijuana while it was in his possession."

"He is accused of possession of a certain article.

"The law says that a person is not capable of committing a crime

same words or in different words. Juries are presumed to understand what is said to them once in plain, simple language.

The instructions found on pages 32 and 39 of the clerk's transcript, given at appellant's request, fairly cover the points embraced in the above nine rejected instructions. Those two directed the jury that to justify a conviction they must find from the evidence (1) that defendant knew he had marijuana in his possession, (2) that he knew it while he had possession; (3) that he was physically and mentally conscious and capable at the time of perceiving and understanding the presence and nature of the narcotic he had.

The instructions given adequately cared for the fact of defendant's conscious knowledge. Their significance and value were not erased by virtue of the court's instructing on the law with reference to voluntary intoxication's not rendering an offense anytheless criminal when committed during intoxication. No instruction given violated the doctrine announced in *People* v. *Gory*, 28 Cal.2d 450, 455 [170 P.2d 433].

Appellant contends that it was prejudicial error to reject his proposed instruction "that if you have a reasonable doubt that defendant . . . was given or received marijuana cigarettes in a package of one of the standard brands of cigarettes made of tobacco and retained it in his possession in the honest and innocent belief that it was a package of that brand of cigarettes, then you must find defendant . . . not guilty." He asserts that the error lies in the fact that the "evidence shows that marijuana cigarettes were contained in a package of one of the standard brands of cigarettes and *there is a reasonable doubt* that defendant must have retained that package in his possession in the honest and innocent

---

if he is not conscious of the act which constitutes the crime, and if he is not conscious of the act he is accused of having committed, he does not thereby commit a crime even though such an act would constitute a crime if committed by him when conscious.

"The law presumes that Mr. MacCagnon would not commit a crime. This means that the law presumes that he would not *accept* possession of the unlawful article if he was *conscious* of his actions.

"The burden is on the People to prove beyond a reasonable doubt that the Defendant at the time the article *came into his possession*, if you find that it did *come into his possession*, was mentally capable of making an intelligent *acceptance* of the article; that is to say, he must have knowingly and intelligently *accepted* its possession.

"If you find that the Defendant was intoxicated at the time, then you must also find whether his intoxication was voluntary or involuntary. If you find that his intoxication was involuntary that fact is evidence pertinent to the question as to whether or not he was able to commit the crime charged against him. Unless the People prove that the Defendant became voluntarily intoxicated, then you must find that his intoxication, if you find him to have been intoxicated, was involuntary."

belief that it was a package of that brand of cigarettes.'' Appellant thereby merely says that as a juror he would have entertained such reasonable doubt of his own guilt because the evidence showed his possession of the contraband in the red package. But the jury probably inferred from appellant's having the package, his concealing it in his sock, his resistance to search, his transferring it to his coveralls, his inebriation from the use of other narcotics (alcohol), his loitering where alcohol is served, his silence at the trial—from these facts—that while appellant was sober, he procured the *canabis sativa,* concealed it in the red package, and hied himself to the café. Nothing in *People* v. *Cole,* 113 Cal.App.2d 253, 258 [248 P.2d 141], required the court to read the last quoted instruction. ''While a specific intent to violate the law is not an ingredient of the crime of possession of a narcotic, 'a knowledge that *the facts exist* which bring the act within the provisions of this code' is necessary.'' Of course, knowledge that he had marijuana in his red package was a *sine qua non.* But how is that pertinent here? The court fairly instructed the jury and they found that appellant knew he had marijuana in his red package from the time he put it in his sock. The instructions maintained the distinction between knowledge of the nature of the narcotic appellant carried and his knowledge that its possession was unlawful (*People* v. *Gory,* 28 Cal.2d 450, 456 [170 P.2d 433]) and by their implied findings the jury determined that he knew both facts. We have no such situation as that in the Cole case. The law there announced is not applicable to the facts here in issue. In addition to the instructions carefully safeguarding the rights of appellant with reference to the knowledge of the substance he possessed, the jury were alerted on his right to the presumption of innocence, reasonable doubt and burden of proof.

### No Error in Admitting Evidence of Value of Marijuana

Assignment is made of the court's having received over objection testimony that the four marijuana cigarettes found in appellant's possession on the day of his arrest were worth one dollar each. There was no error in the ruling. The purpose of the evidence was to rebut the suspicion that some one might have made a gift of the cigarettes without telling appellant. If there was error in the admission of the evidence or in the court's instruction thereon, still the jury could have acquitted. The testimony might have suggested to the jury that the court believed some stranger slipped

the red package into appellant's sock.  (See *People* v. *Nelson,* 70 Cal.App. 476, 482 [233 P. 406].)

### INSTRUCTIONS ON ACCUSATORY STATEMENTS NOT ERRONEOUS

The only spoken words of appellant after arrest were his reply to officer Samuelson when the officer asked the accused whether the red package was the latter's cigarettes. The reply, ''I don't smoke that brand'' was an evasive answer. The officer's question to appellant was whether the cigarettes in the red package were his.  There was no reference to *brand.* But the prisoner, sober enough to engage in subterfuge, avoided giving a direct answer.  The jury were there to determine whether the ''conditions in which appellant was confronted with it'' (the question) fairly afforded ''him an opportunity to reply by reason of the fact of his drunken condition.''  They were fairly instructed with reference thereto: ''if you should find that he heard the accusations and understood its nature, the circumstances of his silence (and conduct) may be considered against him as indicating an admission that the accusation thus made was true.''  Declarations of a prisoner under the influence of intoxicants are not rendered inadmissible by reason of his drunkenness.  That condition ''would go only to the weight of the evidence.'' (*People* v. *Sameniego,* 118 Cal.App. 165, 176 [4 P.2d 809, 5 P.2d 653]; *People* v. *Dorman,* 28 Cal.2d 846, 854 [172 P.2d 686].)

### TRIAL ON INDICTMENT, INFORMATION PENDING

Appellant deems himself aggrieved because the court received and filed on November 10, 1953, the indictment charging the same facts and offense alleged in the pending information, filed early in the same year.  His grievance is augmented by the fact that for five weeks both accusations were pending and appellant was under bail in both; that in October 1953 respondent filed a request that the Supreme Court issue a peremptory writ, without prejudice to proceeding by means of a new preliminary hearing or indictment.

On December 16, 1953, the information (No. 157170) was dismissed in the interest of justice.  Since the trial court was authorized so to dismiss the information (Pen. Code, §§ 1385, 1387) no prejudice was suffered by its dismissal. That the offense alleged in the indictment was the identical crime charged in the information was not material to the proceedings on the indictment.  Hence the trial on the indictment was in order.  The mere fact that the same offense was

charged in the indictment that had previously been charged in the information does not establish any legal connection between the two pleadings. (*People* v. *Grace*, 88 Cal.App. 222, 228 [263 P. 306].) The dismissal of the information put an end to it as effectively as though it had never been filed. (*Ibid.*)

### PROSECUTOR'S OPINION TO THE JURY, NOT PREJUDICIAL

In the course of his argument, the prosecutor commented, "And I think by failing to take the stand he is admitting guilt." Appellant assigns the statement as prejudicial misconduct. After the objection by appellant's counsel, the prosecutor said, "I didn't say it was the law; I say it is my opinion." After more words of the same import, the court emphatically instructed the jury "to disregard the statement of counsel for any purpose whatsoever."

The jury are presumed to have followed the court's instruction. Later the court read CALJIC'S Nos. 51, 51A and 51B* on failure of defendant to testify.

Statements of the prosecutor declaring or implying the guilt of the accused, while not commended, are not prejudicial where they are called to the court's attention and the jury are instructed to disregard them. (Const., art. I, § 13; Pen. Code, § 1323; *People* v. *Zirbes*, 6 Cal.2d 425, 428 [57 P.2d 1319].) Section 1323, *supra*, specifically authorizes

---

*"51. It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. The failure of a defendant to deny or explain evidence against him does not, however, create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

"51-A. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence."

"51-B. In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the people to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the people so as to support by itself a finding against him on any such essential element."

comment upon the defendant's "failure to explain or deny." The same rule applies with reference to appellant's failure to testify. ▮▮▮ It is a presumption that the jury obeyed the court's instruction to disregard any statement ascribing to appellant a consciousness of guilt. (*People* v. *Amer*, 8 Cal.App. 137, 142 [96 P. 401].)

### MOTION FOR NEW TRIAL PROPERLY DENIED

Appellant based his motion upon the affidavits of witnesses O'Donnell, Shibley and Attorney Marshall, counsel for defendant. O'Donnell deposed that during early June 1953 he was a prisoner in the Long Beach jail; saw an officer strike appellant; watched appellant and the officers; saw no one take anything out of appellant's shoes or clothing; never saw an officer show appellant a package of cigarettes; never heard a mention of any narcotic. But when he was called to the stand, O'Donnell testified he "was not paying too much attention" and "I can't be too definite about it." From the affidavit and testimony of O'Donnell and Shibley, it was made clear that O'Donnell was in the "tank" during the trial, February 10 and 11, 1954, and that the court had on the application of Attorney Marshall, signed an order for the production of O'Donnell as a witness. Therefore, he was available as a witness at the trial. The jailer of Long Beach testified that O'Donnell was not in that jail when appellant was booked. Withal, the court found from the jail's records and O'Donnell's testimony that he was not there and could not have seen anything that occurred to appellant in the jail at Long Beach June 7 or 8, 1953. ▮▮▮ Therefore, since the affidavit of O'Donnell was overcome by his own testimony and by other proof (*People* v. *Curtis*, 104 Cal.App.2d 219, 223 [230 P.2d 877]; *People* v. *Rushing*, 130 Cal. 449, 454 [62 P. 742, 80 Am.St.Rep. 141]), and since the "new evidence" was not true, the motion for a new trial was properly denied. (*People* v. *Ross*, 120 Cal.App.2d 882, 889 [262 P.2d 343]; *People* v. *Frankfort*, 114 Cal.App.2d 680, 706 [251 P.2d 401]; *People* v. *Freeman*, 92 Cal. 359, 365 [28 P. 261].)

The judgment and the order denying appellant's motion for a new trial are affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied December 2, 1954, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1954. Schauer, J., was of the opinion that the petition should be granted.